IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

---

**DALLAS KELLY SHANNON,**

    **Plaintiff,**

**v.**                                                                             **No. CIV 02-0717 BB/ WDS**

**THE UNITED STATES OF AMERICA,**
**et al.,**

    **Defendants.**


### MEMORANDUM OPINION AND ORDER

THIS MATTER comes before this Court for consideration of the motion for summary judgment (Doc. 30) filed by Defendant United States. The Court has reviewed the submissions of the parties and the relevant law, and finds that the motion is well supported. Thus, based on the reasons set forth below, the Court finds that the motion should be GRANTED.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

In June 2002, Plaintiff filed a complaint to quiet title to a certain strip of land, which lies on the west bank of the Pecos River up to a fence line and consists of approximately one acre. Plaintiff also sought a declaratory judgment establishing the fence line as the boundary between the two properties, as well as for injunction and permanent enjoinment against the United States' dominion over the disputed strip. Defendant United States filed an answer and counterclaim requesting an injunction against Plaintiff barring him from the disputed property, which Defendant claims belongs to the Forest Service. Defendant United States also sought damages based on

Plaintiff's unlawful use of the disputed property.

The dispute between the parties arose because Plaintiff Shannon and Defendant United States own neighboring parcels of land in San Miguel County, New Mexico. The Shannon property is east of the Pecos River, while both the disputed land and Forest Service property lie west of the river. The Shannon property's chain of title relevant to this case starts in 1944, at which point an individual named Daugherty received title to the land (Pl.'s Resp. to Summ. J. at 4). Daugherty transferred the property to the late Mr. Shannon in November 1948, and, in 1991, Plaintiff Shannon inherited it (Pl.'s Resp. to Summ. J. at 4). The United States property's relevant chain of title starts with an individual named Innis, who owned the property from 1942 to 1956, and who then sold it to the W.C. Kruger Company (Plaintiff's Resp. to Summ. J. at 4). On February 9, 1969, the Defendant United States purchased the property from the W.C. Kruger Company, and the land was subsequently incorporated into National Forest Service land (Def.'s Mem. Supp. Summ. J. at 2).

Plaintiff's record title of the land acquired by his father does not grant any property to Shannon west of the Pecos River, but Plaintiff states in a sworn declaration that the Shannons, including himself, used the disputed land for fishing and recreation (Pl.'s Ex. B at 3). Defendant's warranty deed describes the eastern boundary of the purchased land by metes and bounds and includes the boundary call "along the w[est] bank of the Pecos River." (Def.'s Ex. 1). The fence involved in this dispute was erected in 1948 by Innis, who was the owner of the United States' property at that time. Livestock was introduced on the Forest Service property approximately a year later. From 1949 until the Forest Service purchased title, the land was used for a grazing pasture as part of a dude ranch.

Defendant United States has filed the instant motion for summary judgment, which asserts that Plaintiff's claim to boundary by acquiescence must fail because it is not supported by sufficient evidence to meet the clear and convincing standard.  Defendant also maintains that the true boundary of its property is the Pecos River, and where the true boundary can be ascertained the theory of boundary-by-acquiescence does not apply.  In response, Plaintiff argues two main contentions:  first, that the deed to the United States covers only the property up to the fence line, and does not include the land between the fence and the Pecos River; and second, that the fence line has become the boundary between his land and the United States property (and he has thus acquired ownership of the disputed strip of land) based on the principle of boundary by acquiescence.

## II.  STANDARD OF REVIEW

It is appropriate to grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56( c).  In considering a motion for summary judgment, the Court views all of the facts and construes reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Alder v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998).  If a reasonable trier of fact could find in favor of the nonmoving party based on the factual record, then there exists a genuine issue of material fact that would preclude granting summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is only 'material' if it would affect the outcome of the claim under the substantive law. *See Wright ex rel. Trust Co. of Kan. v. Abbott Labs. Inc.*, 259 F. 3d 1226, 1231-32 (10th Cir. 2001).

The moving party bears the burden of showing that there are no genuine issue of material fact. *See Adler*, 144 F. 3d at 670.  If the moving party does not have the burden of persuasion at trial, then it may meet its burden by pointing out that the nonmoving party lacks sufficient evidence on an essential element of the original claim.  *See id.* at 671; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

When the moving party has met its burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence, which in content would be admissible at trial, that would enable a rational jury to find in favor of the nonmoving party.  *Id.*  Evidence presented at the summary judgment stage need not be in a form that would be admissible at trial, so long as the substance of the evidence would be admissible. *See Wright-Simmons v. City of Okla. City*, 155 F. 3d 1264, 1268 (10th Cir. 1998) (quoting *Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir.1995)).  The nonmoving party's affidavits must "show affirmatively that the affiant is competent to testify to the matters stated therein." *Thomas*, 48 F.3d at 485 (quoting *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1526 n.11 (10th Cir. 1992)) (holding that hearsay evidence cannot be considered at summary judgment unless it falls within an exception).

The construction to be given to a deed is ordinarily a question of law.  *Atlantic Refining Co. v. Beach*, 436 P.2d 107, 110 (N.M. 1968); *Terrill v. Tuckness*, 985 S.W.2d 97, 101 (Tex. Civ. App. 1998) (reversing a jury verdict where call to the creek was clear).  Also, whether ambiguity in a deed exists is a question of law for the courts.  *Atlantic Refining*.

## III.  DISCUSSION

As noted above, there are three main issues in this case:  (1) whether there is undisputed evidence as to the true boundary of the property owned by the United States; (2) if so, whether

that true boundary overrides any possibility that the fence line could have been established as the boundary between the parties under the theory of boundary by acquiescence; and (3) if not, whether Plaintiff has presented sufficient evidence, showing that he has gained title to the disputed land under the theory of boundary by acquiescence, to defeat summary judgment.

**True Boundary of United States Property:** Plaintiff maintains that under the deed from Kruger to the United States, the United States was granted only the property up to the fence line. Since Plaintiff's own chain of title grants him ownership only up to the River, he maintains the disputed strip of property between the west bank of the Pecos River and the fence line is not included in either party's chain of title. Plaintiff's reasoning is based on his contentions that (1) the fence line follows the metes and bounds description contained in the Kruger deed, and (2) that description establishes the true boundary of the United States property.

There are two main problems with Plaintiff's position. First, Plaintiff has provided no information indicating he is qualified to make the determination that the physical location of the fence tracks the metes and bounds description contained in the Kruger deed. This would appear to be a determination that would require an expert opinion, from a surveyor or other qualified expert.

More importantly, however, Plaintiff's argument is contrary to established law concerning construction of surveys and the determination of boundaries. The United States Supreme Court, as well as many other courts, have held that in a survey or property description a call to a natural monument, such as a river, controls over metes and bounds or courses and directions.[1] Therefore,

---

[1] *United States v. State Investment Co.*, 264 U.S. 206, 211 (1924); *Kruger & Birch, Inc. v. Du Boyce*, 241 F.2d 849, 853 (3d Cir. 1957); *Phillips Petroleum Co. v. Threlkeld*, 123 F.2d 434, 437 (10th Cir. 1941); *Terrill v. Tuckness*, 985 S.W.2d at 103; *Padilla v. City of Santa* Fe, 753

in the Kruger survey, the phrase "along the west bank of the Pecos River," which is repeated eight times, controls over the courses and distances contained in the survey. These courses and distances simply attempt to track the bank of the River. The courses and distances are therefore what are known as "meander lines" that attempt to define the "sinuosities" of the River, and the River's bank itself controls over those meander lines for purposes of determining the boundaries of Defendant's property. *See Allen v. Morales*, 665 S.W.2d 851, 852-53 (Ct. App. Tex. 1984); 11 C.J.S., *Boundaries*, § 29(b), pp. 84-85 (meander lines are not the boundaries of the tract surveyed, but are run as a means of ascertaining the quantity of land in the surveyed tract and of defining the sinuosities of the banks of the stream); Exh. A, Def. Reply Brief (expert's affidavit identifying courses and distances in deed as meander lines). The true boundary of the United States property, therefore, is the Pecos River, not the fence which has been erected on a line allegedly tracking the metes and bounds description contained in the Kruger deed.[2]

---

P.2d 353, 357 (N.M. App. 1988); *Hibiscus Harbor, Inc. v. Ebersold*, 406 N.Y.S.2d 182, 183 (Sup. Ct. 1978); *Cordova v. Town of Atrisco*, 201 P.2d 996, 998 (N.M. 1949); *see also* 11 C.J.S., *Boundaries*, § § 50, 51, 60, pp. 106-08, 110-11, 130 (1995); 4 Tex. Prac., *Land Titles and Title Examination* § 815 (2d ed.).

[2]Plaintiff attempts to avoid this result by describing the repeated phrase "along the west bank of the Pecos River" as merely a "passing call," and by attaching a copy of a surveying treatise which states that passing calls should not be given controlling authority. Plaintiff's attempt fails, for several reasons. First, Plaintiff does not explain why the references to the west bank of the River, which appear to plainly delineate the boundary line of the property, should be considered "passing calls." In fact, Plaintiff does not even explain what a passing call is. Defendant has presented an affidavit from an expert, a surveyor, who avers unequivocally that these calls are not passing calls at all. (Exh. C, Def. Reply Brief) In the absence of any contrary evidence or authority, this expert's opinion stands. Furthermore, although there are only a few cases in the Westlaw database that contain the phrase "passing call," the Court's understanding from reading these few cases is that a "passing call" refers to some monument such as a creek or bayou that the boundary line passes over or through. The Kruger deed clearly describes the boundary line of the property as following the bank of the Pecos River, not crossing the bank of the River. Plaintiff's authority concerning "passing calls," therefore, is not persuasive.

6

**Whether True Boundary Controls As a Matter of Law:** Defendant United States argues that if the true boundary between two parcels of land has been ascertained, that boundary cannot be changed by acquiescence. In other words, Defendant contends that even if its predecessors had agreed that the fence was the boundary of their property, that agreement could not, as a matter of law, change the actual boundary. Defendant relies on two New Mexico cases for this proposition: *Castle v. McKnight*, 866 P.2d 323 (N.M. 1993), and *Thomas v. Pigman*, 424 P.2d 799 (N.M. 1967). The Court can find nothing in the *Castle* case to support the idea that, where a true boundary can be ascertained, the doctrine of boundary-by-acquiescence has no applicability. A portion of the *Thomas* opinion does support Defendant's position. However, the Court's reading of prior and subsequent New Mexico cases indicates that New Mexico courts, if faced directly with the issue, would not adopt Defendant's position. For example, in *Tresemer v. Albuquerque Pub. Sch. Dist.*, 619 P.2d 819 (N.M. 1980), the New Mexico Supreme Court addressed the boundary-by-acquiescence question even though the deed to the property clearly identified an arroyo as the true boundary. The Court held the defendant had failed to establish acquiescence in a fence line as the boundary. In so holding, the Court stated that natural monuments such as an arroyo will have preference over an artificial monument such as a fence, *unless* "sufficient evidence is produced to show that these general principles should not apply, because the parties changed the boundaries by acquiescence..." 619 P.2d at 821. This is a clear indication that in New Mexico, parties may change a true boundary, contained in a deed, by acquiescence or agreement that the boundary actually lies in a different location. *See also Woodburn v. Grimes*, 275 P.2d 850 (N.M. 1954) (doubt, uncertainty, or dispute as to location of true boundary is not essential in a boundary-by-acquiescence case; long recognition by abutting

owners can establish a boundary line by acquiescence). Therefore, despite the fact that the boundary line of Defendant's property is clearly established in the Kruger deed as the west bank of the Pecos River, the Court must still address the boundary-by-acquiescence claim.

**Boundary By Acquiescence:** The party claiming an established boundary line by means of acquiescence has the burden of proving the required elements to show acquiescence has in fact occurred. *Tresemer*, 619 P.2d at 820-21. These required elements are: (1) the existence of adjoining landowners; (2) occupation up to a clear and certain line; (3) mutual recognition and acceptance of the line as a boundary; and (4) acceptance of the boundary for a long period of time. *Id.*; *Stone v. Turner*, 738 P.2d 1327, 1328 (N.M. 1987). These elements may be established by the parties' conduct, words, or silence. *Tresemer*, 619 P.2d at 820. Plaintiff in this case must show that the boundary was established and mutually assented to by clear and convincing evidence. *Stone v. Rhodes*, 752 P.2d 1112, 1114 (N.M. App. Ct. 1988). Also, the doctrine of acquiescence can only be applied to privately owned land and does not apply to government land. *Id.* Thus, Plaintiff must prove that the prior adjoining landowners acquiesced in the fence line as the boundary before the land was purchased by Defendant United States.

The first acquiescence element, which requires that the parties be adjoining landowners, is not in dispute here. Also, there is a clear line, the fence line, which is claimed by Plaintiff as the "clear and certain line" requirement contained in the second element. However, as discussed below, the Court finds that Plaintiff's showing is inadequate to survive summary judgment as to the "occupation" aspect of the second element, as well as both the third and fourth elements.

The first and most significant difficulty facing Plaintiff is the fact that, according to the current and prior deeds to his property and to Defendant's property, it was clear to everyone

involved that Plaintiff's property ends at the Pecos River and Defendant's property extends to the opposite bank of the Pecos River. There could be no dispute as to the boundary of Plaintiff's property--every piece of documentary evidence indicates clearly and without equivocation that Plaintiff's predecessors, and therefore Plaintiff, owned only to the center of the Pecos River. Plaintiff has pointed to no reason why he or his predecessors should have had a good-faith belief that they were the owners of any property on the west bank of the River. Thus, there is no basis for a finding that Plaintiff or his predecessors had a reasonable basis to believe that the fence on the west side of the River marked the boundary of their property. *Cf. Olivas v. Garcia*, 329 P.2d 435, 438 (N.M. 1958) (long reliance upon a deed which clearly does not support claim not a basis for boundary by acquiescence). The Court is not prepared to sanction an unreasonable belief as to the location of a boundary, as the basis of a dispute that could then support a claim of boundary-by-acquiescence. *Cf. Tresemer, supra*, 619 P.2d at 820 (doctrine of acquiescence is a principle for settling boundary disputes).

In other words, this is not a case where the boundary between two parcels is an imaginary line on the ground, run between two survey markers, and one party or the other is not clear as to the actual location of the boundary. Instead, in this case there is a clear, prominent natural landmark forming the boundary between the two parcels of land, according to both parties' ownership documents. Furthermore, there was no evidence of some sort of error in Plaintiff's chain of title, that might have given rise to a genuine dispute over the location of the boundary between the two parcels of land, which dispute could then be resolved by resorting to the principle of boundary by acquiescence. Absent unusual circumstances such as evidence that one of Defendant's predecessors intended to make a gift of property to the other party, or bargained

away a piece of the property, it is difficult to fathom how either party could have thought the boundary in this case was not the River, but rather a fence erected on the opposite side of the River from Plaintiff's clearly deeded property.[3] Why would Plaintiff's predecessors think they owned up to the fence on the opposite side of the River, when all of their ownership documents in the chain of title state unambiguously that they owned only to the center of the River? Plaintiff has provided no evidence on this issue, and clear and convincing evidence is therefore lacking as to his own predecessors' acceptance and recognition of the fence, rather than the River, as the actual boundary between the parties' properties.[4]

In an attempt to provide the necessary clear and convincing evidence to counteract the unambiguous boundary established by both parties' deeds, Plaintiff points to the following evidence, contained mainly in Plaintiff's declaration and the supporting exhibits thereto (Resp. to MSJ, Exh. 2): (1) his father told him and his friends not to cross the fence, and that the fence was the boundary between his property and the Innis/Kruger property that became Defendant's

---

[3]The Court recognizes that in New Mexico doubt or uncertainty as to the location of a boundary is not necessary, before the doctrine of boundary by acquiescence can be applied. However, where there is a clear and certain boundary both on the ground and in the parties' chains of title, the party asserting boundary by acquiescence must present clear and convincing evidence establishing both his good faith belief as to why the location of the boundary should be different, and the other party's recognition and acceptance that the actual boundary is not the clear and certain boundary located on the ground, but the proposed alternate boundary.

[4]Plaintiff relies on his own assertion that his father told him the boundary of their property was the fence. This assertion is hearsay and therefore "not grist for the summary judgment mill." *Wright-Simmons v. City of Oklahoma City,* 155 F.3d 1264, 1268 (10th Cir.1998) (in Tenth Circuit, only admissible evidence may be considered in reviewing an order granting summary judgment; content or substance of proffered evidence must be admissible to be used to defeat summary judgment). Furthermore, this evidence does not explain why Plaintiff's father would have believed the boundary was something other than the River, the clearly-stated boundary contained in his deed.

property; (2) at one point, one of Plaintiff's friends allegedly told a Kruger son who was on the west bank of the River that he was on Shannon property, and the Kruger son allegedly apologized and left; (3) occasionally animals that were grazing on Plaintiff's side of the River would also graze on the opposite side of the River, up to the fence; (4) Plaintiff never saw any guest of the dude ranch, or any employee or family member, cross the fence and come down to the River; (5) Plaintiff and his friends would fish from the west bank of the River and played on that side of the River also; (6) this part of the River was a prime fishing area, and if Defendant's predecessors believed they owned past the fence they would certainly have allowed their guests to cross the fence to fish; (7) Innis must have built the fence in 1948 to mark his boundaries, because after the fence was built, one of Plaintiff's predecessors sued Innis concerning a boundary other than the River boundary, and the lawsuit established that Innis had erected the fence along that other boundary; (8) Innis must have believed the fence marked his boundary, because he built the fence on the metes and bounds description of a prior survey; and (9) Innis must not have built the fence to contain livestock, because there were no livestock on Innis' property until a year after the fence was built.

It is immediately apparent that much of the above evidence, insofar as it concerns Innis' intent in building the fence where he did, is pure speculation on Plaintiff's part. The fact that Innis built his fence to track the metes and bounds description, even if true, says nothing about whether Innis thought he was building the fence on his boundary line. He might just as easily have built the fence to track the west bank of the River, but in straight lines rather than curves. Since the metes and bounds description provided such straight lines closely tracking the west bank, the fence would naturally follow that description. Plaintiff's assertions concerning the 1948 lawsuit

suffer from the same weakness--they are pure speculation. The fact that Innis built the fence along his property line on a different side of the property says nothing about his intent concerning the fence along the River side of his property. Again, his intent could easily have been to erect a fence that tracked the curves of the river as closely as possible, yet kept the fence in straight-line sections. It must be kept in mind that Plaintiff's burden is to provide clear and convincing evidence that Innis intended the fence, rather than the River, to be the actual boundary of his property, despite the fact that his deed granted him ownership to the River. The few facts provided by Plaintiff are these: Innis erected a fence that tracked his boundary line on a different side of his property that did not border a stream or river, and at the same time built the fence in question in this case, which did track the River; this action was followed by the lawsuit between Plaintiff's father's predecessor and Innis, concerning the ownership of a different parcel of land not involved in this case. These facts indicate nothing about Innis' intent, given the obvious difficulties that would be faced trying to run a fence directly on the bank of a river.[5] *See Stone v. Turner*, 738 P.2d 1327, 1330 (N.M. App. 1987) ("[I]t therefore appears from the record that the fence was not situated merely because of convenience but was erected as close to the road (section line) as common sense and safety would allow."). Finally, the alleged fact that resort or dude ranch guests did not cross the fence and did not fish from the west bank also indicates

---

[5]In fact, the lawsuit pleadings submitted by Plaintiff in support of his argument actually harm his case. Daugherty, Plaintiff's father's predecessor, acknowledged both in the complaint and the stipulation that ended the lawsuit that his property extended only to the center of the River, not onto the other side of the River. (Exh. 1 to Shannon declaration, Resp. to MSJ) This lawsuit ended only a month or so before Plaintiff's father bought the property from Daugherty. The pleadings, therefore, are further evidence that Plaintiff's father would have been clearly informed that he owned no property on the west side of the River, and that Innis, who built the fence in question in this case, knew that Daugherty and his successors had no ownership interest in any land on the Innis side of the River.

nothing as to Innis or Kruger's beliefs concerning the location of their boundary; no evidence has been presented to show that fishing was even an activity offered at the dude ranch or resort.

Several of Plaintiff's other items of evidence suffer from the infirmity of being pure hearsay. These include the statements made by Plaintiff's father to Plaintiff and his friends, concerning the fence as a boundary, as well as the entire second-hand account of the encounter between one of Plaintiff's friends and the Kruger son. Such testimony cannot establish ownership and the Court will not consider these materials for summary-judgment purposes. *See Terrill v. Tuckness, supra,* and *Wright-Simmons, supra*.

The remaining evidence consists of the fact that Plaintiff and his friends occasionally crossed the River to play on the other side, and that animals grazing on Plaintiff's side of the River also occasionally crossed the River to graze on the west bank, up to the fence line. Missing from these accounts is any indication that any Innis or Kruger family member or employee ever saw these events and had an opportunity or reason to protest. Absent such evidence, no information can be gleaned from this sporadic use of the west bank of the River, concerning the beliefs of Defendant's predecessors as to the boundary line of their property.

Finally, the Court notes the parties spend a good deal of time and effort disputing the issue of whether the fence was originally built as a barrier for livestock. The Court does not believe this is a significant issue. The Court must disagree with Defendant's suggestion that a fence built as such a barrier can never be considered a boundary by acquiescence. It is apparent that a fence might serve two purposes: to enclose a grazing area and mark the boundary of the fence-builder's property. The true issue in this case is not whether the fence was originally built as a livestock barrier, or later was used as a livestock barrier. Instead, the true issue is whether, in addition to

whatever other purposes the fence served, Defendant's predecessors considered the fence to mark the boundary of their property along the River. *Stone v. Turner*, 738 P.2d at 1329-30.

In sum, Plaintiff's showing is lacking in the following areas: first, there is insufficient evidence to raise a genuine issue of fact as to whether Plaintiff's predecessors occupied the disputed area up to the fence line, as required by the second element of an acquiescence claim.[6] Second, there is no evidence, and certainly no clear and convincing evidence, tending to show that Defendant's predecessors considered or recognized the fence line to be the boundary line of their property, as opposed to the River. Third, there is no evidence of any sort of doubt, controversy, or question at all as to whether Plaintiff's predecessors owned any property on Defendant's side of the River, so there is no evidence tending to show that recognition of the fence, rather than the River, as the boundary between the two properties was helpful in resolving any question as to ownership of the disputed strip of property. Finally, there is no evidence at all concerning what the Court will term the "common sense factor." That is, Plaintiff's deed grants him ownership only up to the center of the River; Defendant's deed grants ownership up to the opposite bank of the River. No reason has been suggested or advanced as to why Defendant's predecessors would

---

[6]The extremely sporadic use of the property by Plaintiff and his friends, or by livestock crossing the River, does not constitute the type of "occupation" required by the acquiescence doctrine; such occupation should be sufficient to put a landowner on notice that the neighboring owner asserts a claim of ownership over the disputed property, in the Court's view. *Cf. Cauble v. Beals*, 631 P.2d 1311, 1312-13 (N.M. 1981) (reversing decision of trial court because, in part, landowner was not aware of improvements made in disputed area by neighboring owner). This is especially true since the obvious boundary of Plaintiff's property was the River, and the area obviously occupied by his predecessors lay on the opposite side of the River. Since the actual boundary of Plaintiff's property was the River and was apparent to all, there would have to be some sort of open and obvious occupation of the disputed property, to put Defendant's predecessors on notice that Plaintiff's predecessors asserted some type of ownership claim to that property.

simply cede ownership of the disputed strip of property to Plaintiff's predecessors, by agreeing that the fence was the boundary between the two properties, when Plaintiff's predecessors clearly had no valid claim of ownership to the property.

## IV.  CONCLUSION

The theory of boundary by acquiescence is properly applied where there is some dispute over ownership of certain property, or as to the proper location of the boundary line between two parcels of land.  *Tresemer.*  Each case involving an acquiescence claim is to be analyzed on the basis of its unique facts.  *Id.*  The Court does not believe the theory is properly applied in situations, such as this one, where a natural monument clearly marks the actual boundary between two parcels of property, and the party making the claim of acquiescence plainly has no valid claim to the property lying on the other side of the natural monument.  Defendant's motion for summary judgment will be granted, and this case dismissed.

Dated this 15th day of December, 2003.

_____
UNITED STATES DISTRICT JUDGE

Attorneys:

For Plaintiff:
Thomas A. Simons, IV
Faith Kalman Reyes

For Defendants:
Raymond Hamilton

15

16