IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DALLAS KELLY SHANNON,

    Plaintiff,

v.                                          CIVIL NO. 02-717 BB/WDS

THE UNITED STATES OF AMERICA,
et al.,

    Defendants.

**UNITED STATES' PROPOSED FINDINGS
OF FACT AND CONCLUSIONS OF LAW**

**I.    PROPOSED FINDINGS OF FACT.**

1. Plaintiff Dallas Kelly Shannon filed his Complaint For Quiet Title ("Comp.") on June 20, 2002. (Doc. No. 1)

2. The first claim for relief prayed that title be quieted to plaintiff against the United States in certain land in San Miguel County, New Mexico, on the west bank of the Pecos River "up to the Fence Line." Comp. ¶¶ 28-30.

3. The second claim requested declaratory judgment that the "Fence Line" is the boundary between the "Shannon Land" and the Forest Service. Id. ¶¶ 31-32.

4. Defendant/Counterplaintiff United States of America filed its Answer to the Complaint and Counterclaim ("Counterclaim") on August 26, 2002. (Doc. No. 3) The United States requested an injunction against Dallas Kelly Shannon barring him from unauthorized and unlawful use of property owned by the United States. Counterclaim,

¶ 1.  In addition, the United States sought to recover damages and debt based on the unauthorized and unlawful commercial use of Forest Service land.  **Id**., ¶¶ 1-20.

5.  By Warranty Deed dated February 19, 1969, the United States purchased a 156.62 acre tract of land, which was subsequently included into the National Forest ("Forest Service Property"), from the W.C. Kruger Company, a New Mexico corporation. Defendant's Exhibit A.

6. The Warranty Deed was recorded in San Miguel County, New Mexico. Defendant's Exhibit A.

7. At all times since the 1969 recording date the subject tract, the Forest Service Property, including any property between an existing livestock restraint fence and the Pecos River, has been openly held and administered as part of the Santa Fe National Forest.  Proposed trial testimony of Hickey, Varela and Chavez.

*THE DEED IS UNAMBIGUOUS*

8. The property description in the warranty deed to the United States calls out specifically for the west bank of the Pecos River as the eastern boundary of the property and does not mention the existence of a fence in the deed.  Defendant's Exhibit A.

9. The Deed calls out the west bank of the Pecos River as the eastern boundary of the property and does not mention the existence of a fence.  **Id.**

10. The Deed calls out eight times that the west boundary of the tract is "along the west bank of the Pecos River."  **Id.**

11. The Deed is unambiguous in that it repeatedly refers to the west bank of the Pecos River, not the fence, as the Property's natural boundary marker.  **Id.**

*JURISDICTION IS LACKING*

12. The Quiet Title Act (QTA), 28 U.S.C. § 2409a, is the exclusive means by which adverse claimants can challenge the United States title to real property.

13. The QTA includes an express twelve-year statute of limitations, which begins to run from the date upon which plaintiff's cause of action accrued.  28 U.S.C. § 2409a (g).

14. An action under the QTA shall be deemed to have accrued on the date the plaintiff or his predecessor-in-interest knew or should have known of the claim of the United States.  **Id.**

15. The warranty deed from Kruger to the United States was duly recorded in San Miguel County, New Mexico on March 10, 1969.  Defendant's Exhibit A.

16. According to New Mexico Statutes Annotated §14-9-2 (1978), "Such records shall be notice to all the world of the existence and contents of the instruments so recorded from the time of recording."

17. In 1969, pursuant to New Mexico Statutes Annotated §14-9-2 (1978), plaintiff and/or his predecessor in interest was on constructive notice that the Forest Service Property had been purchased from W.C. Kruger Company by the United States.

18. One of the conditions that will satisfy the "should have known language" of § 2409(a) and trigger the limitations period is constructive notice under applicable state recording statutes.

19. Plaintiff and/or his predecessor in interest knew or should have known of the existence of the interest of the United States in this property in 1969.

*BOUNDARY BY ACQUIESCENCE, OR BY ANY OF PLAINTIFF'S THEORIES IS NOT ESTABLISHED*

20. The livestock enclosure fence within the Forest Property along the west bank of the Pecos River is not mentioned in the Warranty Deed to the United States as being the boundary of the Forest Property and is not the boundary of the Forest Property, according to the Warranty Deed.  Defendant's Exhibit A.

21.  The lands acquired by the United States from the Kruger Corporation have been used for many years for grazing of livestock and had been fenced for their enclosure.  Varela Declaration.  Proposed trial testimony of Hickey, Varela and Chavez.

22.  The record title of land acquired by plaintiff's father does not grant any lands to Shannon west of the Pecos River in the Forest Property.  Proposed trial testimony of Chavez.

23. The Shannon property is east across the Pecos River from the Forest Property (Santa Fe National Forest), and the "Disputed Area" is a strip of approximately 1 acre or more within the Forest Service Property to and into the Pecos River.  Proposed trial testimony of  Chavez.

24. The livestock enclosure fence within the boundary of the Forest Property along the west bank of the Pecos River, is claimed by plaintiff Shannon to be the westerly boundary of his property, under a claim of "boundary by acquiescence."  See Plaintiff's Reply To Counterclaim, Ninth Defense, at 2; see Comp., ¶¶ 10-17.

25.  There will be testimony that the fence claimed to be a boundary "by acquiescence" is a livestock enclosure fence that has been used to enclose livestock on

4

the lands that the United States acquired from the Kruger Corporation, which lands have been historically used for as a pasture area for a dude ranch.  The fence was used to enclose live stock and keep them out of the river. Proposed trial testimony of Varela.

26. Plaintiff has failed to present evidence to show that there was mutual understanding and agreement between Defendant's predecessors and Shannon's predecessors.

27. The Declaration of Chris A. Chavez, Registered Professional Land Surveyor, submitted with the United States' Reply To Response To Rule 60(b) Motion, states that he has surveyed the metes and bounds as provided in the Kruger Deed to the United States, and the fence is not the property boundary as described in the Warranty Deed. See ¶¶ 3-4, Chavez Declaration.  (Doc. No. 60).  A copy of the recorded Boundary Survey Plat is attached to the Chavez Declaration.  Proposed trial testimony of  Chavez, and see Defendant's Exhibits E and F.

*INJUNCTIVE RELIEF*

28. Plaintiff continues to use the Forest Service Property to date, without permit or authorization.  Proposed trial testimony of  Chavez, Varela and Apodaca.

29. Plaintiff continues, to date, to evict public users from use of the Forest Service Property, including to the centerline of the Pecos River.  Proposed trial testimony of Shannon, and Apodaca.


*THE CENTERLINE OF THE PECOS RIVER IS THE FOREST SERVICE PROPERTY BOUNDARY, BY LAW*

30. The Warranty Deed from the W.C. Kruger Company to the United States includes a boundary call, the phrase "along the west bank of the Pecos River" that is repeated eight times in the deed to the Forest Service.  Thus, the river is a "natural boundary" that marks the boundary of the Forest Service Property.  Exhibit A; proposed trial testimony of  Chavez and Simpson.

31. The deed from Kruger to the United States granted to a natural monument, the Pecos River.  Exhibit A; proposed trial testimony of  Chavez and Simpson.

*ADVERSE POSSESSION*

32. The 1969 unambiguous grant of title to the United States to the Pecos River in the Kruger Deed irrefutably gave the United States  "color of title" to the strip between the river and the livestock restraint fence, sufficient to establish the prerequisite element of ownership pursuant to the doctrine of adverse possession.

33. The United States Forest Service ("USFS"), it will be shown at trial, has held and denoted the subject tract  on Forest Service maps as part of the Santa Fe National Forest.  Proposed trial testimony of  Chavez, and see Defendant's Exhibits U and V.

34. The United States has openly claimed of ownership of the disputed tract, and  USFS held its ownership interest under color of title for 33 years prior to plaintiff's lawsuit.   Proposed trial testimony of  Chavez, and see Exhibit A.

35. USFS has actively and openly used the strip since purchase to water Forest Service horses and livestock, and has encouraged  public fishing and access.  Proposed trial testimony of  Chavez and Varela.

*TRESPASS*

36. Federal laws and regulations require that all uses of National Forest System lands, improvements, and resources (except those specifically exempted) be authorized by a special use permit.  36 C.F.R. § 251.50 et seq.

37.  The Santa Fe National Forest is a component of the National Forest System.

38.  Upon information and belief, Dallas Kelly Shannon is operating a trout fishing business on National Forest System land on the west bank of the Pecos River within the Santa Fe National Forest without a permit from the Forest Service authorizing such use (See Plaintiff's Complaint, paragraphs 18 and 21).  Dallas Kelly Shannon receives a fee for this service.  Proposed testimony of Shannon; Exhibit T.

39. Plaintiff has never filed an application or sought an authorization in the form of a special use permit from the Forest Service to operate this business on National Forest System land.  Proposed testimony of Hickey and Shannon.

40. In pursuit of this business, Mr. Shannon has anchored structures to impede the flow of the river on National Forest System lands.  Proposed testimony of Hickey, Chavez, and Shannon; Exhibits N(1) - N(3), W.

41. The conduct of Dallas Kelly Shannon described above is intentional and contrary to federal law.

42. A trespass exists when structures are built on National Forest System lands without an appropriate permit or license.

43. By willfully anchoring structures related to an unauthorized trout fishing business on the Santa Fe National Forest, Dallas Kelly Shannon has committed and is now committing a willful trespass upon the property of the United States.

*DAMAGES AND PROFITS*

44. As a direct and proximate result of Mr. Shannon's willful trespass, a determination has been made of possible damage sustained to riparian vegetation or other resources along the Pecos River and the cost to restore and reclaim the damaged property.  Proposed trial testimony of  Chavez and Hickey.

45. The Forest Service is authorized to collect an annual rental fee for the use of National Forest System land.  36 C.F.R. § 251.57.

46. Dallas Kelly Shannon is indebted to the United States for his unauthorized commercial use of the Santa Fe National Forest for an undetermined period of time as this illegal use was only recently discovered.

47. The United States will seek past fees based on the fair market value of the use of National Forest System land as determined by 3% of the gross annual income associated with this unauthorized use.  Mr. Shannon is also liable to the United States for interest and other charges on the debt imposed by law and regulation, including but not limited to the ten percent surcharge under 28 U.S.C. §3011(a).

**II.     PROPOSED CONCLUSIONS OF LAW.**

*THE DEED IS UNAMBIGUOUS*

A. The Warranty Deed ("Deed") from the Kruger Corporation to the United States was duly recorded in 1969 in San Miguel County, New Mexico.

B. The Deed is unambiguous.

C. The eight calls in the legal description in the Deed to "along the West bank of the Pecos River" establish the Pecos River as the easterly boundary of the property conveyed to the United States, the Forest Service Property.

*JURISDICTION*

D. New Mexico Statutes Annotated §14-9-2 (1978) provides that the recording of a deed shall give constructive notice of its contents.

E. Plaintiff or his predecessor was given constructive notice pursuant to the New Mexico statute of the United States' claim to the Pecos River as its boundary in 1969.

F.  The statute of limitations provision in the Quiet Title Act mandates that a claim against an ownership interest of the United States in real property must be brought within 12 years of the date of accrual. 28 U.SC. § 2409a (f).

G. The accrual of the plaintiff or his predecessor's claim against the United States began in 1969.

H. Plaintiff's lawsuit was filed in 2002, and is time barred.

I. Plaintiff's complaint is hereby dismissed, with prejudice, due to lack of subject matter jurisdiction.

*INJUNCTIVE RELIEF*

J. Plaintiff is hereby enjoined from committing acts indicating ownership of Forest Service Property or any infringing upon any right attendant to the United States' ownership, such as posting "no trespass" signs on Forest Service Property, or

prohibiting public access to Forest Service Property, or placing cables or structures on Forest Service property, or interfering with the riparian rights of the United States in any way.

*BOUNDARY BY ACQUIESCENCE, OR BY ANY OF PLAINTIFF'S THEORIES IS NOT ESTABLISHED*

K. Plaintiff has failed to meet his burden of proof by clear and convincing evidence to establish the fence line is the east boundary of the Forest Service Property under the doctrine of "boundary by acquiescence."

L. Parol evidence may not be used to alter the unambiguous terms of the deed from Innis to Kruger, or from Kruger to the United States, calling out for the west bank of the Pecos River as the east boundary of the Forest Service Property.

M. The metes and bounds description in the Warranty Deed from Kruger to the United States does not follow the fence line.

N. A fence used to restrain grazing, may not be presumed to be a fence acquiesced to for a property boundary, and the silence of one of the parties may not be presumed to be proof of acquiescence.  **Stone v. Turner**, 106 N.M. 82, 83-84 (Ct. App. 1987); **Warren v. Collier**,  262 Ark. 656, 658, 559 S.W. 2d 927, 928 (1978).

O. The true boundary will prevail over a purported fence boundary by acquiescence.  **Castle v. McKnight**, 116 NM 595, 597 (1993).

*CENTERLINE OF THE PECOS RIVER IS THE BOUNDARY, BY LAW*

P. The general rule is that where a natural object having extension is named as a boundary, the line runs to the middle of the object.  **Cordova v. Town of Atrisco**, 53 N.M. 76, 201 P. 2d 996, 999 (1949).

Q. The easterly boundary of the Forest Service Property is the center, or thread, of the Pecos River.

*ADVERSE POSSESSION*

R. Adverse possession requires actual, visible, exclusive, hostile and continuous possession, under color of title, for the statutory period of ten years. **Board of Trustees of the Tecolote Land Grant v. Griego,** 136 N.M. 688, 104 P.3d 554 (Ct. App. 2004). The United States has established ownership of the subject tract by adverse possession.

*TRESPASS*

S. The plaintiff has trespassed, and is now in trespass, on the Forest Service tract due to placing a cable and other structures on the Forest Service Property and has unlawfully trespassed on the Forest Service Property to chase lawful fisher-persons and recreationists from the Forest Service Property.

*DAMAGES AND PROFITS*

T. Plaintiff owes the United States a sum of money due to damage to the Forest Service Property for costs to restore the Forest Service Property.

U. Plaintiff owes the United States equitable apportionment of the sum of money he has received or charged persons for "rod fees" or "rent," to fish on Forest Service Property.

V. Plaintiff owes past fees based on the fair market value of the use of National Forest System land as determined by 3% of the gross annual income associated with this unauthorized use, and is also liable to the United States for interest and other

charges on the debt imposed by law and regulation, including but not limited to the ten percent surcharge under 28 U.S.C. §3011(a).

    W. Plaintiff owes annual rental fees pursuant to 36 C.F.R. § 215.57, from the date of placing the first structure on the Forest Service Property.

DAVID C. IGLESIAS
United States Attorney


<u>Electronically Filed on 4/25/05</u>
RAYMOND HAMILTON
Assistant U.S. Attorney

    I CERTIFY that a copy of the foregoing document was delivered to counsel of record on April 25, 2005.

<u>Electronically Filed on 4/25/05</u>
RAYMOND HAMILTON
Assistant U.S. Attorney

N:\RHamilton\shannon\United States FINDINGSCONCLUSIONS.wpd