IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

**DALLAS KELLY SHANNON,**

      **Plaintiff,**

v.   No. CIV 02-717 BB/WDS

**UNITED STATES OF AMERICA; UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture; ANN M. VENEMAN, Secretary of the Department of Agriculture; DALE BOSWORTH, Chief of the Forest Service; ELEANOR S. TOWNS, Regional Forester in Region III of the Forest Service,**

      **Defendants.**

<u>COURT'S FINDINGS OF FACT
AND CONCLUSIONS OF LAW</u>

THIS MATTER came on for a bench trial on May 11, 12, and 13, 2005, in Santa Fe, and all evidence having been presented, and the Court having considered the parties' proposed findings and conclusions, and having reviewed the relevant law, now makes its findings of fact and conclusions of law:

<u>Findings of Fact</u>

1.    Plaintiff Dallas Kelly Shannon owns land on the Pecos River near Terrero, New Mexico. Shannon obtained this land by deed from his father, Lyle "Mike"

Shannon. Mike Shannon, along with another couple, purchased the property in 1948 from its former owner, David M. Daugherty.

2. Defendant United States Forest Service ("USFS") purchased its property ("Forest Service Property"), located across the Pecos River from the Shannon property, in 1969 from the W.C. Kruger Company ("Kruger").

3. Kruger purchased the property in late July 1956 from its prior owner, R.B. Innis. Innis purchased the property, which had been held in receivership as a result of tax foreclosure, in 1942 from the receiver, Williams. In the Receiver's Deed approved by the court in 1942, the property was described in part as follows:

> ...thence N. 39 deg. 07' E. a distance of 1236.3 feet to Corner No. 8; thence S. 21 deg. 55' E. a distance of 622.9 feet to Corner No. 9; thence S. 38 deg. W. <u>along the West Bank of the Pecos River</u>, a distance of 91 feet to Corner No. 10; thence S. 6 deg. W. <u>along the West bank of the Pecos River</u>, a distance of 261 feet to Corner No. 11; thence S. 12 deg. W. <u>along the West bank of the Pecos River</u>, a distance of 204 feet to Corner No. 12; thence S. 21 deg. W. <u>along the West Bank of the Pecos River</u>, a distance of 386 feet to Corner No. 13; thence S. 13 deg. 20' W. <u>along the West bank of the Pecos River</u>, a distance of 285 feet to the Corner No. 14; thence S. 1 deg. E. <u>along the West bank of the Pecos River</u>, a distance of 397 feet to Corner No. 15; thence S. 7 deg. W. <u>along the West bank of the Pecos River</u>, a distance of 267 feet to Corner No. 16; thence S. 3 deg. W. <u>along the West bank of the Pecos River</u>, a distance of 116 feet to Corner No. 17.... (Emphasis added).

4. The deed from Innis to Kruger, and then from Kruger to the United States, contains the same calls and distances along the west bank of the Pecos River.

5.  **In the Order confirming the tax foreclosure sale, the court noted that the receiver delivered to the purchaser "a good and sufficient deed to the following described property situate in San Miguel County, New Mexico, to-wit:**

    **Property on the Pecos River in San Miguel County known as the Putney property and formerly known as the Prudencio Gonzales Place, being situated in the W ½ of Section 4, Township 17 North of Range 12 East, and containing a minimum of 159.63 acres, as shown on the survey and plat made by Ross Engineering Office, dated May, June and August, 1938.**

    **(Emphasis added).**

6.  **USFS Regional Land Surveyor Garland Burnett is a retired land surveyor who worked for the Santa Fe National Forest, has had experience with riparian boundaries, and is a practicing surveyor in New Mexico. In 1992 Burnett was asked to investigate the boundary between the Forest Service and the Shannon properties. Burnett did a careful investigation and did not take his task lightly because he was aware that because the opinion was issued as an agent of the USFS, it carried some weight.**

7.  **Burnett responded to the Pecos District Ranger's "request for information regarding property line locations between lands owned by Mr. Kelly Shannon and the United States of America," by concluding:**

    **"The deed to the United States calls not for the center of the Pecos River, but the 'West bank'. That is the limiting call that tells us the Federal boundary is the west bank of the Pecos River and not the center line and the bearings and distances that follow are only informational as to where the west bank may have been at some point in time. If the deed to the U.S.**

> had stated, 'to the Pecos River,' or said, 'bounded on the east by the Pecos River.' [sic] The property line would be the center of the Pecos River."

8. Burnett's ultimate conclusion was that the United States' western boundary is the bank, not the middle, of the Pecos River. The memo concluded, "If asked to locate the property of the United States I would interpret the title line to be the mean high water mark of the West bank of the Pecos River."

9. The deed's language with reference to the west bank is limiting language that means exactly what it says. The west bank of the Pecos River is the eastern boundary of the Forest Service Property.

10. The livestock enclosure fence near the west bank of the Pecos River is claimed by Shannon to be the westerly boundary of his property, under a legal theory of "boundary by acquiescence." This would place the eastern boundary slightly west of the west bank of the Pecos River and give Shannon both banks of the river.

11. The "disputed area" is a strip of approximately one acre or more within and adjacent to the Forest Service Property up to the Pecos River. The strip is approximately one-half mile long, and ranges from a few to as much as 60 feet wide.

12. The bank of the Pecos River is east of, and beyond, the livestock restraint fence. It is uncontested that by deed the property on the east side of the river belongs to

        **Shannon up to the river's centerline, but Shannon claims the predecessors of the Forest Service Property acquiesced to the livestock fence rather than the bank of the Pecos River as the boundary.**

13. **At the time Innis purchased the Forest Service Property in 1942, there was already a fence running along the west bank of the Pecos River. It is uncontested this was used for a livestock enclosure.**

14. **Nothing in the chain of title for either property supports acknowledgment of or acquiescence of the fence as a boundary. The livestock enclosure fence is not mentioned in the Receiver's Deed or any subsequent Warranty Deed to the Forest Service Property. Rather, the three deeds in the chain of title to the United States call out the west bank of the Pecos River as the eastern boundary of the property. Nor do Shannon's deeds make any reference to the fence.**

15. **Mr. Gonzalo Varela lived and worked on the Innis dude ranch from approximately 1950 to 1956. Varela's Uncle Pedro was the foreman of the ranch, and Varela's father was a part-time handyman and plumber for the Innis dude ranch. He testified the fence claimed to be a boundary "by acquiescence" was historically only used to delimit the pasture area for the Innis dude ranch. The fence was used to enclose livestock and keep them out of the river.**

16. **Varela personally observed the guests of the Innis ranch using the "strip" between the livestock restraint fence and the river for hiking and fishing. He**

        observed that the Innis ranch used a large station wagon-type van emblazoned with the ranch logo, to transport guests north to the bridge so they could fish "down" the river in the now disputed area.

17. Varela testified his father and other Innis ranch employees also fished in the strip between the fence and the Pecos River. They were never restricted from crossing the livestock fence and fishing along the river.

18. Since the Innis employees and guests were never told to regard the fence as the boundary, their continued use shows a lack of acquiescence in the fence as the boundary.

19. At no point in time did Shannon ever believe that he was trespassing in the disputed area between the livestock fence and the center of the river, and no one from the Forest Service ever so informed him.

20. Shannon was never asked to take down any cables or other structures in the disputed area by any representative of the United States. In fact, once they were up, he was told *not* to remove them.

## Conclusions of Law

1. The Court has subject matter and personal jurisdiction over the parties. Venue is proper in this district.

2. The question remaining for determination is the eastern boundary of the Forest Service Property. Plaintiff claims the Forest Service deed is ambiguous and the

    **boundary is set by the distances and calls, not the Pecos River. In any event, the property owners acquiesced in the livestock fence as the boundary. The Court rejects both arguments.**

3. **Each of the experts testified consistently that the priority of calls doctrine applies only where a deed is ambiguous.**

4. **In New Mexico, "the intention of the parties 'as gathered from the four corners of a deed, is the pole star of construction, and ... all parts of the deed must be examined together, for purpose of ascertaining the intention.'"** *Atlantic Refining Co. v. Beach*, **436 P.2d 107, 110 (N.M. 1968) (quoting** *Sharpe v. Smith*, **360 P.2d 917, 918 (N.M. 1961)).**

5. **The deeds in the Forest Service chain of title are not ambiguous. The terminology "along the west bank of the Pecos River" is a call evidencing the clear intention of the original grantor to establish the line along the bank of the river as the boundary.** *See United States v. Goodrich Farms Partnership*, **947 F.2d 906 (10th Cir. 1991);** *Maestas v. Martinez*, **752 P.2d 1107 (N.M. App. 1988)** *Burnham v. City of Farmington*, **957 P.2d 1163 (N.M. App. 1998).**

6. **The language of the deeds of conveyance in the Forest Service's chain of title is unambiguous and sets forth the Pecos River as the western boundary of the property. Only by finding that the west bank of the Pecos River is the boundary can the Court give effect to all parts of the deed.** *Tagliaferri v. Grande*, **120 P.**

        730, 732 (N.M. Terr. 1911); *Cordova v. Town of Atrisco*, 201 P.2d 996, 999 (N.M. 1949).

7.   "The river's banks are defined as the 'boundaries which confine the water to its channel throughout the entire width when [a] stream is carrying its maximum quantity of water.'" *Burnham*, 957 P.2d at 1171 (quoting BLACK'S LAW DICTIONARY 1328 (6th ed. 1990)).

8.   To establish a boundary by acquiescence, adjourning landowners must occupy their respective tracts up to a clear and certain line which they mutually recognize and accept as the boundary for a long period of time. *Tresemer v. Albuquerque Public Sch. Dist.*, 619 P.2d 819 (N.M. 1980); *Stone v. Turner*, 738 P.2d 1327 (N.M. App. 1987). Moreover, the adjoining landowners must "acquiesce in a fence as a boundary for all the purposes to which a property was placed during the period involved." *Sachs v. Board of Trustees*, 577 P.2d 209, 216 (N.M. 1976). While some of the Innis family believed the fence was the boundary, their dude ranch was not operated on that belief and neither guests nor employees were ever required to observe the fence; rather, they were permitted, and encouraged, to treat the river bank as the boundary and fish and hike between the fence and the west bank of the Pecos River.

9.   Even if the Innis family had unequivocally acquiesced in honoring the fence as the boundary, acquiescence may not establish the boundary where substantial

        **evidence indicates the true boundary.** *Thomas v. Pigman*, **424 P.2d 799, 803 (N.M. 1967);** *Sproles v. McDonald*, **372 P.2d 122 (N.M. 1962).**

**10.**    **Once the Forest Service acquired the property, acquiescence was not legally possible, for under New Mexico law the doctrine of boundary by acquiescence only applies to private, not public, land.** *Stone v. Rhodes*, **752 P.2d 1112, 1114 (N.M. App. 1988).**

**11.**    **The Forest Service did not prove a claim for trespass against Shannon in the disputed area. The United States produced no evidence that Shannon entered and remained on its lands without permission.** *State v. Tower*, **59 P.3d 1264 (N.M. App. 2002).** *Cf.* **NMSA § 30-14-1.1(A) (criminal trespass requires a request to leave). Nor did the United States introduce any evidence that Shannon intended to interfere with property rights of the Forest Service.** *Texas-New Mexico Pipeline Co. v. Allstate Constr., Inc.*, **369 P.2d 401 (N.M. 1972).**

**12.**    **Based on its untimely disclosure and resulting prejudice to Plaintiff, the Court denied the United States' Rule 15 motion to amend the pleadings at trial to permit proof of adverse possession of the disputed area.**

        **All tendered findings and conclusions not incorporated herein are deemed Denied.**

A Judgment consistent with these findings of fact and conclusions of law should be drawn up by counsel for the Forest Service and presented to the Court within twenty (20) days.

DATED at Albuquerque this 21st day of June, 2005.

**BRUCE D. BLACK**
**United States District Judge**